UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB SCHEIBE, individually and on behalf of all others similarly situated,<br><br>Plaintiff(s),<br><br>v.<br><br>PERFORMANCE ENHANCING SUPPLEMENTS, LLC, dba PEScience, a Delaware limited liability company,<br><br>Defendant. | Case No.: 3:23-cv-00219-H-DDL<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>[Doc. No. 6.] |

On February 6, 2023, Plaintiff Jacob Scheibe ("Plaintiff"), individually and on behalf of all others similarly situated, filed a class action complaint against Defendant Performance Enhancing Supplements, LLC, dba PEScience ("PES"). (Doc. No. 1, "Compl.".) On April 10, 2023, PES filed a motion to dismiss the complaint. (Doc. No. 6.) On April 24, 2023, Plaintiff filed an opposition to the motion. (Doc. No. 7.) On May 1, 2023, PES filed a reply in support of its motion. (Doc. No. 8.)

The Court, pursuant to its discretion under Local Rule 7.1(d)(1), determines that the motion is fit for resolution without oral argument and submits the motion on the parties' papers. For the reasons laid out below, the Court grants PES' motion to dismiss in its entirety with leave to amend.

# BACKGROUND

Plaintiff is a resident and citizen of California. (Compl. ¶ 1.) PES is a company that formulates, manufactures, and sells supplements. (Id. ¶ 20.) One of PES' products is a dietary supplement called "Versalyte" (the "Products"). (Id.) In the complaint's introductory paragraph, Plaintiff defines "the Products" as "Versalyte." (Compl. at 1.) Versalyte comes in three flavors, wild berry splash, citrus splash, and black cherry.[1] PESCIENCE VERSALYTE, http://pescience.com/products/versalyte?variant=39994050510923 (last visited May 31, 2023). Plaintiff seeks to represent a California class of consumers who purchased Versalyte within the past four years. (Compl. ¶ 55.)

Plaintiff claims that, on or about October 23, 2022, he purchased Versalyte's wild berry and citrus splash flavors from Amazon. (Id. ¶ 18.) The front label of the wild berry and citrus splash flavors state that they are "naturally flavored." (Id. ¶ 21.) The front label of the black cherry flavor states that it is "naturally and artificially flavored." PESCIENCE VERSALYTE, http://pescience.com/products/versalyte?variant=39994050510923 (last visited May 31, 2023).

Plaintiff also alleges that, on the back label, "[a]ll flavors of the Products . . . state that they contain 'malic acid'." (Compl. ¶ 23.) There are two forms of malic acid, one that is naturally occurring—"L malic acid"—and one that is a synthetic substance derived from petrochemicals—"DL malic acid." (Id. ¶ 24; Doc. No. 6-1 at 1.) Plaintiff alleges that the Products natural flavoring labels are false and misleading because an independent third-

---

[1] "A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003). Here, the Court considers all of Versalyte's products and labels as part of the complaint for purposes of the instant motion because Plaintiff relies on Versalyte's labels in the complaint and broadly defines the term "the Products" as "Versalyte" in the complaint. See In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1058 n.10 (9th Cir. 2014) ("Because Plaintiffs incorporate by reference Mr. Hunt's declaration, relying on portions of it in then complaint, we may properly consider the declaration in its entirety.")

party laboratory confirmed that the malic acid in the Products is DL malic acid, meaning the Products contain artificial flavoring. (Compl. ¶¶ 22, 24, 30, 41.)

Plaintiff claims that he reviewed the Products' labels and specifically the statement that they contain natural flavors prior to buying the Products. (Id. ¶¶ 19, 50.) Plaintiff also contends that he relied on the labels' statements and would not have purchased the Products or would have only been willing to pay a substantially reduced price had he known about PES' alleged misrepresentations—that they use artificially derived DL malic acid. (Id. ¶¶ 50, 51.)

Plaintiff's complaint alleges claims for: (1) violation of the "unfair" prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL"); (2) violation of the UCL's "fraudulent" prong; (3) violation of the UCL's "unlawful" prong; (4) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq. ("FAL"); violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq. ("CLRA"); (6) unjust enrichment; and (7) breach of express warranty. (See Compl.) PES moves to dismiss Plaintiff's complaint in its entirety. (Doc. No. 6-1 at 2.)

## LEGAL STANDARDS

### A.   12(b)(6) Motion to Dismiss

PES moves to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Dismissal is appropriate where "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

In reviewing the plausibility of a complaint, courts must "accept factual allegations

in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008). But courts do not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. In re Gilead Scis. Secs. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008). Ultimately, the court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663.

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting Doe v. United States, 58 F.3d 484, 497 (9th Cir. 1995)); see also Gardner v. Marino, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion denying leave to amend when amendment would be futile).

**B.  Federal Rule of Civil Procedure 9(b)**

Claims based in fraud require a heightened particularity in pleading. See Fed. R. Civ. P. 9(b). Federal Rule of Civil Procedure 9(b) establishes that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." Id. The circumstances required by Rule 9(b) are the "who, what, when, when, where, and how" of the fraudulent activity. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011). In addition, the allegation "must set forth what is false or misleading about a statement, and why it is false." Id.

This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Additionally, it "attempts to protect defendants from the harm that may come to their reputations or to their goodwill when they are charged with wrongdoing: '[I]t has been said [that the requirement] is necessary to safeguard potential defendants from lightly made

claims charging the commission of acts that involve some degree of moral turpitude.'" Macchiavelli v. Shearson, Hammill & Co., 384 F. Supp. 21, 28 (E.D. Cal. 1974) (quoting Wright and Miller, 5A Federal Practice and Procedure: Civil § 1296 (3rd ed.)).

## DISCUSSION

### A.    Failure to State a Claim

#### i.    Rule 9(b)'s Applicability

PES argues that Plaintiff fails to state a claim under Rule 9(b)'s heightened pleading standard. (See Doc. No. 6-1 at 4-8.) Rule 9(b)'s heightened pleading standard applies to "averments of fraud" in civil cases brought in federal court. See Fed. R. Civ. P. 9(b). Specifically, the Ninth Circuit has held that Rule 9(b) applies to UCL and CLRA claims that are grounded in fraud. Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009); Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1103–06 (9th Cir. 2003). Additionally, the Ninth Circuit has held that a claim is "grounded in fraud" for the purposes of Rule 9(b) where "the plaintiff [ ] allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim." Vess, 317 F.3d at 1103–04.

Here, all of Plaintiff's claims rely entirely on the same course of alleged conduct: PES fraudulently misrepresenting that the Products are naturally flavored. (Compl. ¶¶ 18-54.) Because Plaintiff alleges that PES has engaged in a unified course of fraudulent conduct, it is inconsequential that fraud is not an element of some of Plaintiff's claims. See Vess, 317 F.3d at 1103. Accordingly, all seven claims are grounded in fraud and subject to Rule 9(b)'s heightened pleading requirement. See, e.g., Loh v. Future Motion, Inc., No. 21-cv-06088-EJD, 2022 WL 2668380, at *5 (N.D. Cal. July 11, 2022)("[E]ach claim is subject to the requirements of Rule 9(b)" including claims for UCL, CLRA, FAL, and unjust enrichment); Arabian v. Organic Candy Factory, No. 17-cv-05410-ODW, 2018 WL 1406608, at *3-4 (C.D. Cal. Mar. 19, 2018) ("Each of [p]laintiff's ten claims . . . must be pleaded with particularity" including claims for express warranty, CLRA, UCL, FAL, and unjust enrichment).

///

         ii.       Plaintiff's Allegations

PES asserts that Plaintiff's allegations do not satisfy Rule 9(b)'s requirements because they fail to identify "what Products were tested, when they were tested, [and] what laboratory performed the alleged testing." (Doc. No. 6-1 at 7.) The Court agrees. Plaintiff's allegations fail to plead with particularity the "how" of the fraudulent activity. Rule 9(b) requires the "who, what, when, when, where, and how" of the fraudulent activity. See Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) Here, Plaintiff's allegations adequately identify PES and Versalyte as the "who" and the "what", the year and place of his purchase as the "when", and pictures of the Product's labels as the "where." (Compl. ¶¶ 2, 18, 20-23, 50-54.) However, Plaintiff's only allegation for the "how" prong is a single conclusory allegation that states "testing by an independent third-party laboratory has confirmed that the malic acid that Defendant uses in these Products is DL malic acid . . . ." (Id. ¶ 24.) Plaintiff's conclusory allegation fails to meet 9(b)'s particularity requirement because it fails to give PES notice of the particular misconduct which is alleged to constitute the fraud. See Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). PES is left to guess whether all three of the Products' flavors were tested, it was some combination of flavors that Plaintiff tested, or only one of the flavors was tested.

In response, Plaintiff argues that he did identify what products were tested because "'Products' is a defined term in the Complaint . . . and it is alleged that 'the Products' were tested." (Doc. No. 7 at 7.) The Products, however, are defined in the complaint as "Versalyte." (Compl. at 1.) This does not provide PES notice of the particular misconduct which is alleged to constitute the fraud because there are three flavors of Versalyte—one of which, the black cherry flavor, indicates that it is artificially flavored on its label. PESCIENCE VERSALYTE, http://pescience.com/products/versalyte?variant=39994050510923 (last visited May 31, 2023). Testing a product that lists that it is artificially flavored would presumably indicate the presence of DL malic acid and would thereby tell PES nothing about whether the remaining Products contain the natural L malic acid or the synthetic DL malic acid. Accordingly, Plaintiff's claims fail to meet the heightened

6

3:23-cv-00219-H-DDL

standard of Rule 9(b) and are dismissed. <u>Semegen v. Weidner</u>, 780 F.2d 727, 731 (9th Cir. 1985); <u>see also</u> <u>In Re Bang Energy Drink Marketing Litig.</u>, No. 18-cv-05758-JST, 2020 WL 4458916, at *5 (N.D. Cal. Feb. 6, 2020) (plaintiff's allegation regarding independent testing, without additional more specific allegations, "failed to meet the heightened standard of Rule 9(b).").

### B. Standing to Pursue Injunctive Relief

PES also moves to dismiss Plaintiff's claims for injunctive relief on the ground that Plaintiff lacks standing to pursue such relief. (Doc. No. 6-1 at 11-12.) Plaintiff's UCL, FAL, and CLRA claims seek an order enjoining PES from engaging in alleged deceptive labeling practices. (Compl. ¶¶ 80, 88, 96, 103, 54 [sic].) Prospective injunctive relief requires a plaintiff to show a threat of future injury that is "actual and imminent, not conjectural or hypothetical." <u>Summers v. Earth Island Inst.</u>, 555 U.S. 488, 493 (2009). "[A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." <u>Davidson v. Kimberly-Clark Corp.</u>, 889 F.3d 956, 969 (9th Cir. 2018) (quoting <u>Summers</u>, 555 U.S. at 493). To establish standing, the previously deceived consumer must sufficiently allege "an imminent or actual threat of future harm caused by [the] allegedly false advertising," such as a desire to purchase the product again in the future. <u>Id.</u> at 970.

Here, Plaintiff does not allege that he seeks or intends to purchase the Products again. (<u>See</u> Compl.) Further, Plaintiff's opposition fails to point to an instance where Plaintiff alleged that he sought or intended to purchase the Products at some point in the future. (<u>See</u> Doc. No. 7.) Plaintiff's future harm is thus "conjectural or hypothetical" and not "actual and imminent." <u>Summers</u>, 555 U.S. at 493. Plaintiff cites to <u>Davidson</u> arguing that it supports his argument that he has standing to bring claims for injunctive relief. (<u>Id.</u>) <u>Davidson</u> is distinguishable because the plaintiff in that case alleged a desire to purchase the products again. <u>See</u> <u>Davidson</u>, 889 F.3d at 971. Plaintiff failed to do so. Accordingly,

Plaintiff lacks standing to pursue his claims for injunctive relief and those claims are dismissed. See, e.g., Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 969 (9th Cir. 2018); Brand v. KSF Acquisition Corp., No. 22-cv-392-LAB, 2023 WL 3225409, at *3 (S.D. Cal. Mar. 17, 2023) (granting motion to dismiss claims for injunctive relief where the first amended complaint failed to allege that the plaintiff intended to purchase the products again).

### C. Claims for Equitable Relief

Next, PES moves to dismiss Plaintiff's claims to the extent they seek equitable relief arguing that Plaintiff fails to allege inadequacy of legal remedies. (Doc. No. 6-1 at 9-11.) The Court agrees. "[E]quitable relief is not appropriate where an adequate remedy exists at law." Schroeder v. U.S., 569 F.3d 956, 963 (9th Cir 2009). A plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." Sonner v. Premier Nutrition Corp., 971 F.3d 834, 844 (9th Cir. 2020). Courts have extended this requirement to FAL claims as well. See Robie v. Trader Joe's Co., No. 20-cv-7355-JSW, 2021 WL 2548960, at *6 (N.D. Cal. June 14, 2021).

Here, Plaintiff's CLRA claim seeks relief in the form of monetary damages in addition to equitable relief. (Compl. ¶ 53 [sic].) Additionally, the complaint contains no allegations establishing that Plaintiff lacks an adequate remedy at law. (See Compl.) "[A] party seeking equitable relief must specifically plead the inadequacy of monetary damages in federal court." Martinez v. Ford Motor Co., No. 22-cv-1082-MMA, 2022 WL 14118926, at *8 (S.D. Cal. Oct. 24, 2022). Plaintiff failed to do so.

Plaintiff argues that "the claims for equitable relief are explicitly pleaded in the alternative . . . [and] [s]uch alternative pleading is permitted under California and federal law." (Doc. No. 7 at 10.) While Plaintiff may plead claims for equitable relief in the alternative at the pleading stage, see Johnson-Jack v. Health-Ade LLC, 587 F. Supp. 2d 957, 976 (N.D. Cal. 2022), "plaintiff must, at a minimum, *plead* that []he lacks adequate remedies at law if []he seeks equitable relief." Guthrie v. Transamerica Life Ins. Co., 561

F. Supp. 3d 869, 875 (N.D. Cal. 2021) (emphasis in original).  Here, Plaintiff failed to plead any facts as to why his CLRA claim provides an inadequate remedy at law.  Accordingly, to the extent Plaintiff's claims seek equitable relief they are dismissed because Plaintiff failed to state a claim for equitable relief.  See, e.g., Sonner v. Premier Nutrition Corp., 971 F.3d 834, 844 (9th Cir. 2020); Freund v. HP, Inc., No. 22-cv-03794-BLF, 2023 WL 187506, at *6 (N.D. Cal. Jan. 13, 2023) (granting motion to dismiss claims for equitable relief because plaintiffs failed to plead that they lack an adequate remedy at law).

### D. Preemption

Additionally, PES argues that using the term malic acid on the Products' labels is consistent with federal requirements[2] and thus "any claims based on that theory must be dismissed" as preempted.  (Doc. No. 6-1 at 8-9.)  Plaintiff argues that the claim is not preempted because malic acid should be listed by a more specific name, namely DL malic acid or L malic acid. (Doc. No. 7 at 8-10.)  A handful of courts have addressed this dispute concerning the use of malic acid on product labels and the vast majority have ruled against Plaintiff's side. See, e.g., Gross v. Vilore Foods Co., Inc., No. 20-cv-0894-DMS, 2020 WL 6319131, at *3 (S.D. Cal. Oct. 28, 2020) (finding plaintiff's claims on the malic acid theory preempted); Hilsley v. Gen. Mills, Inc., 376 F.Supp.3d 1043, 1048–49 (S.D. Cal. 2019) (same); Branca v. Bai Brands, LLC, No. 18-cv-00757-BEN, 2019 WL 1082562, at *5-6 (S.D. Cal. Mar. 7, 2019) (same); Morris v. Mott's LLP, No. 18-cv-1799-AJG, 2019 WL 948750, at *4-5 (C.D. Cal. Feb. 26, 2019) (same); Sims v. Campbell Soup Co., No. 18-cv-668-PSG, 2018 WL 7568640, at *7-8 (C.D. Cal. Sept. 24, 2018) (same); but see Allred v. Frito-Lay N. Am., Inc., No. 17-CV-1345 JLS (BGS), 2018 WL 1185227, at *3 (S.D. Cal. Mar. 7, 2018) (finding it "plausible that DL-malic acid and L-malic acid are specific names

---

[2]   The federal regulations at issue are 21 C.F.R. §§ 101.4(a) and (b). (See Doc. No. 7 at 9.)  Section 101.4(a) states that "[i]ngredients required to be declared on the label or labeling of a food . . . shall be listed by [their] common or usual name . . . ." 21 C.F.R. § 101.4(a).  And section 101.4(b) states that "[t]he name of an ingredient shall be a specific name and not a collective (generic) name[.]" 21 C.F.R. § 101.4(b).

of the (collective, common) name malic acid").

Here, Plaintiff relies on <u>Allred</u> to support his argument. (Doc. No. 7 at 9.) The Court, however, finds the reasoning of the majority of Courts to be persuasive. Specifically, the Court agrees with the reasoning of <u>Gross</u>, where the court found that "§ 101.4(b), which requires the use of a 'specific name,' did not override § 101.4(a), which requires the use of a 'common or usual name.'" 2020 WL 6319131, at *3 (citation omitted). The <u>Gross</u> court harmonized the two regulations by finding that § 101.4(b) simply clarified § 101.4(a) by requiring that multiple ingredients be listed separately rather than as one generic ingredient. <u>Id.</u> (providing an example that "apples, oranges, and grapes can't be listed collectively as fruit") (citation omitted). Accordingly, to the extent Plaintiff's claims are based on the assertion that the Products' labels should specifically list DL malic acid instead of malic acid, those claims are preempted. <u>See</u>, <u>e.g.</u>, <u>Gross</u>, 2020 WL 6319131, at *3.

E.  **Leave to Amend**

Plaintiff repeatedly states in his opposition that he should be granted leave to amend his complaint should the Court find any shortcomings in his pleadings. (Doc. No. 7 at 2, 6, 7, 8, 13.) Whether to grant leave to amend rests in the sound discretion of the trial court. <u>See</u> <u>Bonin v. Calderon</u>, 59 F.3d 815, 845 (9th Cir. 1995). Generally, dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." <u>Jackson v. Carey</u>, 353 F.3d 750, 758 (9th Cir. 2003).

Consistent with Plaintiff's request, the Court grants Plaintiff leave to amend the complaint if Plaintiff can do so consistent with the law cited in this Order. Plaintiff is cautioned that if his first amended complaint does not cure the deficiencies pointed out in this Order, the Court may dismiss Plaintiff's claims with prejudice and without leave to amend.

**CONCLUSION**

For the foregoing reasons, the Court grants PES' motion to dismiss, (Doc. No. 6), and dismisses the complaint in its entirety with leave to amend. To the extent that Plaintiff

wishes to amend his complaint, he may do so by filing a motion for leave to amend by **June 26, 2023**.

      **IT IS SO ORDERED.**

DATED: June 5, 2023

                                                                     _____
                                        MARILYN L. HUFF, District Judge
                                        UNITED STATES DISTRICT COURT